UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO LAMAR HEATH,

        Petitioner,        Case No. 1:13-cv-234

v.        Honorable Robert Holmes Bell

CINDI S. CURTIN,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. On June 14, 2011, following a jury trial in the Ingham County Circuit Court, Petitioner Lorenzo Lamar Heath was convicted of three counts of armed robbery, MICH. COMP. LAWS § 750.529, one count of home invasion, MICH. COMP. LAWS § 750.110a(2), one count of conspiracy to commit armed robbery, MICH. COMP. LAWS § 750.157a[1], and one count of possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS 750.227b.[2] On July 22, 2011, Petitioner was sentenced to concurrent terms of imprisonment of: (1) 12 years to life on each of the armed robbery convictions; (2) 12 to 20 years on the home invasion conviction; and (3) 3 to

---

[1] The court's docket sheet indicates that the jury found Petitioner guilty of conspiracy to commit a legal act in an illegal manner. (Ingham Cty. Cir. Ct. Register of Actions, ECF No. 16, p. 13.) The trial transcript indicates that the jury found Petitioner guilty of the charge of conspiracy to commit armed robbery. (June 14, 2011 Trial Tr., ECF No. 23, pp. 93-94.) The statute declaring the conduct criminal is the same, MICH. COMP. LAWS § 750.157a, but the penalties are different. Conspiracy to commit armed robbery would carry a sentence comparable to the sentences imposed for armed robbery. MICH. COMP. LAWS § 750.157a(a). Conspiracy to commit a legal act in an illegal manner, on the other hand, carries a sentence of not more than 5 years. MICH. COMP. LAWS § 750.157a(d). It appears that Petitioner is the beneficiary of a clerical error in that his sentence on the conspiracy conviction had a maximum term of 5 years.

[2] The jury found Petitioner not guilty of armed robbery or assault with intent to do great bodily harm less than murder with respect to one of the four victims.

5 years on the conspiracy conviction. Petitioner received a consecutive sentence of 2 years on the felony firearm conviction.

In his *pro se* petition, Petitioner raises three grounds for relief, the same grounds he raised in the Michigan Court of Appeals and Michigan Supreme Court on his direct appeal:

I. The evidence was legally insufficient.

II. Petitioner's Sixth Amendment right to cross-examination was denied.

III. Where a primary witness is threatened with revocation of his plea agreement, it is constitutionally improper to deny his request for counsel, ultimately destroying Petitioner's right to fundamental fairness and a fair trial.

(Pet. App. A, ECF No. 1-1, PageID.22.) The Michigan Court of Appeals issued an opinion affirming the trial court on August 14, 2012. Petitioner applied for leave to appeal in the Michigan Supreme Court. That court denied leave by order entered November 20, 2012. Petition did not petition for a writ of certiorari to the United States Supreme Court.

On March 1, 2013, Petitioner filed his petition for writ of habeas corpus in the Court. (ECF No. 1.) On October 23, 2013, Respondent filed an answer to the petition (ECF No. 14), stating that the grounds should be denied because they are without merit. On October 28, 2013, Respondent filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES. (ECF Nos. 16 - 26.)[3] Upon review and applying the AEDPA standards, the Court finds that all habeas grounds are

---

[3]The Rule 5 materials include several transcripts of the trial court proceedings. The transcripts shall be referenced as follows:

| | |
|---|---|
| September 2, 2010 Preliminary Examination | (Prelim. Examination Tr., ECF No. 17, p.__) |
| June 6, 2011 Trial Transcript (Volume 1) | (Trial Tr. I, ECF No. 18, p.__) |
| June 7, 2011 Trial Transcript (Volume 2) | (Trial Tr. II, ECF No. 19, p.__) |
| June 9, 2011 Trial Transcript (Volume 3) | (Trial Tr. III, ECF No. 20, p.__) |
| June 10, 2011 Trial Transcript (Volume 4) | (Trial Tr. IV, ECF No. 21, p.__) |
| June 13, 2011 Trial Transcript (Volume 5) | (Trial Tr. V, ECF No. 22, p.__) |
| June 14, 2011 Trial Transcript (Volume 6) | (Trial Tr. VI, ECF No. 23, p.__) |
| July 22, 2011 Sentencing Transcript | (Sentencing Tr., ECF No. 24, p.__). |

meritless. Accordingly, the Court will deny the petition for failure to raise a meritorious federal claim.

## Procedural and Factual Background

On the evening of January 4, 2009, Ernestine Hernandez was making stuffed manicotti in her apartment at 3620 Richmond Street in Lansing, Michigan. (Trial Tr. II, ECF No. 19, pp. 105-108.) As she worked in the kitchen, her live-in boyfriend, Benito Solis, played video games in the living room while her 15-year-old son, Augustine, watched. (*Id*.) The activities of the apartment residents were interrupted by a knock on their patio door. (*Id*., p. 109.)

The visitor was Eric Blakney-Smith, known to Ernestine's family as "Red." (*Id*., p. 110.) Red was no stranger to the apartment. His cousin Dre was Ernestine's upstairs neighbor. (*Id*., p. 111.) Red had visited to play video games several times. (*Id*., p. 112.)

Red had come in through the patio, but, shortly after he entered, he left by way of the front door. (Id., p. 113.) A couple of minutes later, Ernestine heard a knock at that door. (*Id*., pp. 113-114.) Augustine answered the door. (*Id*.) He walked back into Ernestine's view with a gun held to his head by Frank Whitfield, known to Ernestine as "Blue." (*Id*., pp. 114-115.)

Blue was accompanied by Red and two other men, strangers to Ernestine. (*Id*., pp. 115-122.) Red acted as if he too was a victim of the gunmen. His hands were up and when Whitfield informed the residents that they were being robbed and to lie down, facing the floor, Red did so as well. (*Id*., pp. 118, 123.) Ernestine indicated that over the course of the robbery each man, except Red, held a gun at some point. The men, eventually including Red, ransacked the apartment collecting items of value. (*Id*., pp. 127-133.) The robbers left after someone knocked on the sliding

door. (*Id.*, pp. 133-136.) Augustine and Benito corroborated Ernestine's description of the events in the apartment that evening. (Trial Tr. III, ECF No. 20, pp. 31-70, 131-156.)

The person who knocked on the door and interrupted the robbery was Benito's brother Carlos. (*Id.*, pp. 72, 76.) Red chased him down and robbed him; then another man[4] arrived, threatened Carlos' family and shot Carlos in the leg. (*Id.*, pp. 86-94.)

Ultimately, the two known robbers were apprehended. Although each told a slightly different story, Red and Blue identified their co-conspirators: Blue's brother (Petitioner) and Petitioner's son, Devon Patton. The victims could not identify Petitioner or his son. The testimony of Red and Blue was critical to link Petitioner to the crimes.[5]

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or

---

[4]There was no testimony conclusively linking Petitioner to the robbery or shooting of Carlos. The jury acquitted Petitioner of both counts (robbery and assault) relating to crimes against Carlos. (Trial Tr. VI, ECF No. 23, pp. 93-94.)

[5]At Blue's plea and at the preliminary examination for Petitioner and Devon Patton, Blue provided sworn testimony that identified Petitioner as one of the four men. At trial, although he acknowledged his earlier testimony, he indicated that only three men were present and Petitioner was not present. Red consistently identified Petitioner as one of the four men.

involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

### I. Sufficiency of the evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401 02 (1993). Rather, the habeas court is required to examine the evidence

supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [appellate court's] consideration of the trier of fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency of the evidence grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that the testimony of Red and Blue was sufficient to support finding the essential elements of the charged crimes beyond a reasonable doubt:

> This case arises out of an armed robbery of an apartment committed by four assailants in January 2009. Heath argues that the evidence was insufficient to support his convictions because the evidence did not establish his involvement in the crimes. We disagree. We review de novo a challenge to the sufficiency of the evidence. "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." "[D]irect and circumstantial [evidence], as well as all reasonable inferences that may be drawn therefrom," may be considered to determine whether there was sufficient evidence to support a defendant's conviction.

   The eyewitnesses whose apartment was burglarized were unable to identify Heath as a participant in the robbery and there was no physical evidence demonstrating that Heath was in the home.  Two accomplices, however, testified regarding Heath's involvement in the armed robbery.  Heath asserts that the alleged accomplices' testimony was not sufficient to convict him.  Frank Whitfield [Blue], Heath's half-brother, initially testified that Heath left the vehicle and was not present during the robbery.  Whitfield, however, received a plea agreement in exchange for his testimony against Heath and the other accomplices, and had testified regarding Heath's involvement in the armed robbery during Whitfield's plea hearing, Heath's preliminary examination, and during a proffer statement to police.  At trial, Whitfield indicated that he did not want to testify at trial and explained that he previously testified against Heath because he was angry with Heath and wanted a plea agreement.  But when Whitfield was confronted with his previous statements detailing Heath's involvement in the armed robbery, he then testified that it was "the truth of this case" that Heath robbed the apartment with his accomplices.  While Whitfield's testimony was somewhat erratic, the jury as the finder of fact could have found that the portion of Whitfield's testimony implicating Heath was credible.

   Additionally, another accomplice, Eric Blakney–Smith [Red] testified in exchange for a plea agreement. Blakney–Smith testified that Heath was involved in the planning, and participated in the armed robbery, including having possession of a handgun at times during the armed robbery.

   Moreover, the occupants of the apartment, who were eyewitnesses to the robbery, testified consistently regarding the actions of the four assailants.  The details provided by the eyewitnesses included, how the assailants gained access to the apartment, the directions the assailants gave the occupants, as well as information regarding the assailants' search and exit from the apartment.  The testimony provided by the eyewitnesses was consistent with Whitfield's previous statements, and Blakney–Smith's trial testimony.  "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of the witnesses."  Therefore, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support Heath's convictions.

*People v. Heath,* No. 305364, 2012 WL 3322069 *1-2 (Mich. Ct. App. Aug. 14, 2012) (footnotes omitted).  The court of appeals cited *People v. Tennyson* , 790 N.W.2d 354 (Mich. 2010) for the sufficiency standard.  The *Tennyson* court, in turn, relied on *People v. Hardiman*, 646 N.W. 2d 158 (Mich. 2002); *Hardiman* relied upon *People v. Johnson*, 597 N.W. 2d 73 (Mich. 1999), *People v. Wolfe*, 489 N.W. 2d 748 (Mich. 1992), and *People v. Hampton*, 285 N.W.2d 284 (Mich. 1979).

*Johnson, Wolfe*, and *Hampton* cite *Jackson* as the source of the standard. Thus, it cannot be said that the standard applied by the court of appeals was contrary to clearly established federal law.

In its application of the *Jackson* standard, the court of appeals carefully reviewed the evidence, considering that evidence in a light most favorable to the prosecution. The court's entire analysis is quoted above. The analysis on its face is consistent with, not contrary to, clearly established federal law. The factual findings with respect to the evidence offered by the prosecutor appear to be reasonable.

Petitioner does not even attempt to find fault with the state court's application of the *Jackson* standard or its factual findings. Instead, he simply views the same evidence in a light that favors him and, therefore, reaches different conclusions. Petitioner's entire argument depends on rejecting the testimony of Red and Blue because, according to Petitioner, that testimony was "bought" with favorable sentences. This Court is not permitted to make such assessments of credibility on habeas review. *Herrera*, 506 U.S. at 401-02  It is Petitioner's argument, not the state court's determination, that is a patently unreasonable application of the *Jackson* standard. Petitioner's challenge to the sufficiency of the evidence has no merit.

II.     Cross-examination of Blue

Petitioner claims that his cross-examination of Red was unconstitutionally limited. As a preliminary matter, although Petitioner complains about the cross-examination of Red, the transcript excerpt he quotes to support his argument is taken from the cross-examination of Blue. (Pet. App. A, ECF No. 1-1, PageID.42-43.) During the cross-examination, Petitioner's counsel, Ms. Adam, attempted to elicit from Blue testimony that his favorable plea/sentencing deal was dependent upon the content of his testimony. The challenged exchange reads:

Q (Ms. Adam) Then did they tell you would get less time if you testified in a certain way?

MR. CRINO: Well, objection. The police or Prosecutor?

THE COURT: I think that's an improper question. I think all you can ask is if he testified truthfully. You can't ask leading questions along those lines. So you have to have a more appropriate question.

THE WITNESS: If I testified -

THE COURT: And I once again would caution the jury that questions are not evidence. Only answers are evidence.

Q (MS. ADAM) Were you told that your penalty would be less if you testified in a certain manner?

A Yes.

MR. CRINO: Excuse me.

THE COURT: Strike that question. I think the issue is if he gives a truthful statement. You haven't even gotten to the testimony portion yet. I think the question should be what were you told if you cooperated, something along those lines.

MS. ADAM: Okay. But that's not exactly where I'm going.

THE COURT: We aren't at the testimony yet. You're leading the witness.

MS. ADAM: I'm allowed to lead in cross, Your Honor.

THE COURT: I think it has to be chronological. We have three different things here. You have a proffer. You have preliminary examination under oath. You have a statement under oath before Judge Giddings. So maybe if you lay a little better foundation, zero in on what we're talking about, when it occurred.

MS. ADAM: Okay. I don't think I was going to go chronologically. But I will try.

THE COURT: I am not saying you have to, but you just have to identify at what point in time you are inquiring about.

(Trial Tr. IV, ECF No. 21, pp. 95-97.)  After that exchange, Petitioner's counsel continued to probe why Blue had implicated Petitioner if Blue now acknowledged that Petitioner had not been part of the robbery.  Blue's response, however, was not that he lied because the police or the prosecutor had promised more favorable treatment, but that he lied because he was mad at Petitioner.  (*Id.*, pp. 100-101.)   There was no other limitation on the content of Petitioner's cross-examination of Blue (or Red for that matter.)

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. CONST., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  The Supreme Court long has read this right as securing an adequate opportunity to cross-examine adverse witnesses.  *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242-43 (1895), and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)).  As the Supreme Court early held,

> The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox*, 156 U.S. at 242-43, *quoted in California v. Green*, 399 U.S. 149, 157-58 (1970).  While the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee "'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).  "[T]rial judges retain wide latitude insofar as the Confrontation Clause is

-11-

concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013); *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999).

The Michigan Court of Appeals resolved Petitioner's challenge as follows:

> Heath next argues that he was denied the right to cross examine witnesses when the trial court errantly limited his cross-examination of Whitfield. We disagree. We review a trial court's decision on an evidentiary issue for an abuse of discretion.11 An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of "reasonable and principled outcome[s]."
>
> "The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'" "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." "[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence that might bear on the accuracy and truth of a witness' testimony." Prevention of "any exploration of a witness' bias" is a denial of a defendant's right to confrontation. A trial court, however, may limit cross-examination regarding bias because "the trial court has wide discretion regarding admissibility of bias during cross-examination."
>
> While the trial court sustained the prosecution's objection to defense counsel's question regarding whether Whitfield was told that he would receive less prison time if he provided certain testimony, the trial court did not deny Heath the opportunity to question Whitfield regarding his bias. Review of the trial court's comments in context reveals that the trial court indicated that it was necessary for defense counsel to clarify which of Whitfield's statements she was inquiring about when formulating her questions in order to lay a foundation. Whitfield was questioned extensively by defense counsel regarding the details of Whitfield's plea agreement and the circumstances surrounding Whitfield's varying statements. Accordingly, there was no abuse of discretion by the trial court.

*Heath*, 2012 WL 3322069 at *2 (footnotes omitted). The court of appeals' statement of the standard is consistent with, and not contrary to, clearly established federal law. Its determination of the facts with regard to the broad scope of the cross-examination permitted by the trial court is reasonable on

the record. The court placed no real limit on the scope of cross-examination with respect to Blue's bias. Petitioner's habeas challenge based on the Confrontation Clause has no merit.

### III. Blue's right to counsel

At the very beginning of Blue's testimony, he asked the trial court for an opportunity to raise an issue. (Trial Tr. IV, ECF No. 21, p. 21.) After the jury was excused, Blue told the judge that the prosecutor had threatened him by indicating to Blue that failure to testify consistently with his plea colloquy might result in Blue losing the benefits of his plea bargain. (*Id.*, pp. 22-27.) The court explained that the prosecutor's statement were not a threat, but simply a statement of the plea agreement. (*Id.*, pp. 22-51.) Blue requested and Petitioner's counsel supported a request by Blue to have the advice of counsel. (*Id.*, pp. 48-49.) The court refused. (*Id.*)

Petitioner claims that, under these circumstances, Blue was denied his Sixth Amendment right to counsel and, for that reason, his testimony was effectively coerced. Accordingly, Petitioner argues, Petitioner's trial was rendered fundamentally unfair and he was denied due process.[6]

In *Alexander v. Lafler*, No. 11-10286, 2013 WL 3191134 (E.D. Mich. Jun. 21, 2013), the court rejected the argument Petitioner makes here:

> Under federal law, a criminal defendant does not have standing to challenge the voluntariness of a statement made by a witness to the police because the privilege against self-incrimination of the Fifth and Fourteenth Amendments is personal in nature and does not extend to third parties called as witnesses at trial. *United States v. Nobles*, 422 U.S. 225, 234 (1975); *Berry v. Mintzes*, 529 F.Supp. 1067, 1075 (E.D. Mich. 1981). While the Sixth Circuit has indicated that the use of a witness's coerced testimony may violate a defendant's rights under the Due Process Clause of

---

[6]The court of appeals concluded that Petitioner lacked standing to raise the issue. *Heath*, 2012 WL 3322069 at *2 ("Heath argues that Whitfield's right to counsel was violated when he was coerced to testify against Heath when Whitfield was told that failure to do so would result in him losing his plea agreement. Heath is not permitted to raise this issue on Whitfield's behalf.")

> the Fourteenth Amendment, *see Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973), the Supreme Court has not so ruled. *See Samuel v. Frank*, 526 F.3d 566, 569 (7th Cir. 2008); *see also Johnson v. Bell*, 525 F.3d 466, 479–81 (6th Cir. 2008) (distinguishing *Webb v. Texas*, 409 U.S. 95(1972), and *Washington v. Texas*, 388 U.S. 14 (1967), and denying relief on a claim that authorities coerced a witness into providing favorable prosecution testimony). Federal habeas review is limited to a determination of whether the state court decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 412; *Mitzel v. Tate*, 267 F.3d 524, 530–531 (6th Cir. 2001). Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue.

*Alexander*, 2013 WL 3191134 at *10 (parallel citations omitted). The *Alexander* court's reasoning is persuasive. Here, however, Petitioner is not entitled to relief for an additional reason: the coercion did not succeed. Blue ignored the "coercive threats." His testimony did not implicate Petitioner. Instead, Blue testified that he dropped off Petitioner before the robbery and that Petitioner was not there. Thus, any violation of Blue's constitutional rights was harmless in that it did not result in prejudice to Petitioner.

On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave*, 248 F. App'x at 728 (citing *Fry v. Pliler*, 551 U.S. 112, 129 S. Ct. 2321, 2328 (2007)); s*ee also Vasquez v Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638. The "error" of which Petitioner complains had no effect at all. His habeas claim has no merit.

## Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to present a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: December 20, 2016 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE